BOYD, Justice,
concurring in part and dissenting in part.
I agree with the Court’s application of the principle stated in our recent decision of Argonaut Insurance Co. v. May Plumbing Co., 474 So.2d 212 (Fla.1985), that a plaintiff is entitled to prejudgment interest from the date of the loss when the verdict has the effect of fixing the amount of damages with certainty as of that certain prior date. However, in my view the question of whether the plaintiff was entitled to prejudgment interest in this case is a moot point as there was prejudicial error requiring reversal on other grounds.[1]
By the verdict of the jury, petitioner-respondent Airtech Service, Inc., was found negligent in the provision of aircraft repair service performed on an airplane owned by International Aircraft Sales and Leasing, Inc. Airtech Service appealed the judgment rendered against it, and the subrogee-plaintiff, referred to in the record as “Underwriters at La Concorde,” appealed the trial court’s decision not to award prejudgment interest. The district court of appeal provided extensive discussion of the prejudgment interest issue in reaching the erroneous[2] conclusion that prejudgment interest was for the jury to assess and that the failure of the plaintiff to submit a written jury instruction form justified the trial court’s refusal to instruct the jury on the matter.
The question of prejudgment interest was clearly a secondary or ancillary issue before the appellate court, as the losing party at the trial, Airtech Service, was clearly the primary aggrieved party and on appeal challenged the legal propriety of any judgment being entered against it at all. Far from recognizing Airtech Service as an aggrieved appellant, the district court of appeal even questioned whether Air-tech’s “cross-appeal” was proper. Then it gave superficial and perfunctory consideration to the issues raised on appeal by Air-tech Service. I find both of Airtech’s appellate arguments meritorious and would direct reversal.
The action was brought by a party denominating itself as “Underwriters at La Concorde, as Subrogee of International Aircraft Sales and Leasing Corporation.” By appropriate pleadings defendant Airtech Services, Inc., questioned whether the plaintiff was a legal person or entity with capacity to sue, sought to discover the identity and nature of the plaintiff, and gave notice that it questioned whether the plaintiff was such a legal person or entity and that it would demand proof of same at trial. See Fla.R.Civ.Pro. 1.120(a).
It is axiomatic that the capacity to sue in the courts of Florida attaches only to natural or legal persons. See, e.g., Keehn v. Joseph C. Mackey and Co., 420 So.2d 398 (Fla. 4th DCA 1982); 39 Fla.Jur.2d Parties § 8 (1982). Groups of natural persons not taking on the corporate form of a separate legal entity, such as partnerships and unincorporated associations, are not legal persons and do not have such capacity unless it is specially conferred by statute. 39 Fla.Jur.2d Parties § 2 (1982). It was not established by competent, substantial evidence at trial that “Underwriters at La *430 Concorde” was a legal person entitled to bring a legal action in court.
It appears from the record that Underwriters at La Concorde is an unincorporated association of insurers and is not itself an entity engaged in the business of insurance or anything else. The district court of appeal disposed of Airtech’s contention on this point by reference to authorities dealing with the concept of the real party in interest. The issue is not whether plaintiff was the real party in interest; concededly, the insurer who paid the insured’s casualty loss would be entitled to bring the negligence action in its own name as subrogee of the insured. The issue is whether the party calling itself Underwriters at La Concorde was a person, natural or legal, with capacity to sue. Until it is established that the party bringing the action is a person, the question of whether it is a real party in interest does not arise.
Plaintiff relies on section 624.04, Florida Statutes (1979), as support for the proposition that Underwriters at La Concorde is a legal person. That statute defines “person” for purposes of the Florida Insurance Code as follows:
“Person” includes an individual, insurer, company, association, organization, Lloyds, society, reciprocal insurer or interinsurance exchange, partnership, syndicate, business trust, corporation, agent, general agent, broker, solicitor, service representative, adjuster, and every legal entity.
However, the fact that the statute gives a broad definition of “person” for purposes of the many and various regulatory provisions of the Florida Insurance Code has nothing whatsoever to do with a party’s having the capacity to sue in Florida courts, which requires that the plaintiff be a natural or legal person.
There was testimony that Underwriters at La Concorde is an organization similar to Lloyd’s of London. It is a matter of common knowledge that Lloyd’s of London is not an insurer, nor is it a legal entity. It is an unincorporated association of insurers, the purpose of which is merely to facilitate brokerage, exchange, referral, and joint undertaking of insurance contracts by actual insurers. Because there was no proof that the plaintiff was a person, the appellate court should have reversed.
Airtech Service’s other contention is that the trial court erred in instructing the jury that the failure to follow the procedures set forth in the Federal Aviation Authority’s inspection regulations constituted negligence per se. On appeal, Airtech’s specific argument was that the trial court had given an instruction based on a regulation not in effect at the time of the rendering of service.[3] The district court acknowledged that this mistake had been made, but found the error harmless on the ground that the substance of the instruction was consistent with the standards imposed by the administrative regulations in effect at the time of the repair work. I think the issue of the “negligence per se” instruction deserves a closer look.
An instruction that defendant’s conduct was “negligence per se” is proper if there was a violation of (1) a statute “designed to protect a particular class of persons from their inability to protect themselves,” or (2) a statute “which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury.” deJesus v. Seaboard Coastline Railroad Co., 281 So.2d 198, 201 (Fla.1973). It is true that the “negligence per se” concept has been expanded by some courts to include violations of administrative regulations as well as statutes. Florida Freight Terminals v. Cabanas, 354 So.2d 1222 (Fla.3d DCA 1978). This treatment has been criticized, however, on the ground that administrative rules should not be raised “to the dignity of a penal statute or ordinance.” Jackson v. Harsco Corp., 364 *431 So.2d 808, 810 (Fla.3d DCA 1978) (Barkdull, J., concurring specially).
The concept of “negligence per se” based on violations of statutes, ordinances, or rules must be applied carefully. Even when it is recognized that a violation of a statute, ordinance, or rule normally constitutes negligence, the application of the doctrine to support a jury instruction thereon may or may not be proper depending on the circumstances. See, e.g., Swoboda v. United States, 662 F.2d 326 (5th Cir.1981) (F.A.A.’s violation of its own regulation was excusable under the circumstances and did not support a finding of negligence); Brown v. South Broward Hospital District, 402 So.2d 58 (Fla.4th DCA 1981) (property owner’s violation of building code did not support finding of negligent conduct toward employee of contractor working on premises). Moreover, even a violation of a penal statute will not support a “per se” instruction or even be admissible without a threshold legal determination of a causal connection between the statutory violation and the injury. See Brackin v. Boles, 452 So.2d 540 (Fla.1984).
The F.A.A. regulations in question pertained to the requirement that maintenance and repairs performed in connection with required regular, periodic maintenance and inspection programs be carried out according to the maintenance and inspection manual adopted for a particular aircraft. The jury was instructed that if the landing-gear repair performed by Airtech Service was not accompanied by a step-by-step series of inspections set forth in the maintenance manual, then Airtech was guilty of negligence. The instructions had the effect of requiring the jury to apply the requirements in the inspection manual submitted to them to the defendant’s repair service provided prior to the crash. The problem with this, as defendant argued in the courts below and argues here, is that the lessee in possession of the aircraft brought it to Airtech Service for correction of a particular problem and not for routine, periodic, or progressive maintenance and inspection services. Because the customer had not requested an inspection in accord-anee with the periodic inspection manual or any portion thereof, no such routine or periodic inspection was performed by Air-tech Service. Therefore it was unfair to instruct the jury that defendant was required to perform an inspection in accordance with the procedures set forth in the manual and that if it failed to do so, it was guilty of negligence. The instruction was not based on any requirements in the F.A.A. regulations, accurately read and properly understood. The erroneous instruction relieved the jury of the burden of examining the evidence of negligence and applying ordinary reason, logic, and common sense thereto. The effect of the instruction was to hold the defendant strictly liable for the malfunction of the landing gear simply because it had performed repair service to the landing gear. The landing gear has many components and features and the defendant did not undertake to perform an overall inspection of the entire landing gear. The mere possibility that a defendant’s repair work may have been negligent and may have had some connection with a subsequent landing gear malfunction is not sufficient to establish ■negligence and causation. See, e.g., Raritan Trucking Corp. v. Aero Commander, Inc., 458 F.2d 1106 (3d Cir.1972). Here there may have been sufficient evidence to support the jury’s verdict even absent the erroneously admitted exhibits and the erroneously given instructions, but we cannot tell with certainty what effect the errors had so they cannot be deemed harmless.
I would quash the decision of the district court of appeal and direct that the judgment be reversed on both of the foregoing separate and independent grounds.

. Contrary to the assertions in the motion to dismiss Airtech Service’s cross-notice of review, the issues raised by such cross-notice are properly before the Court.

. The majority opinion courteously points out that the district court’s decision was rendered prior to this Court’s resolution of the issue in Argonaut Insurance Co. v. May Plumbing Co. However, the opinion in Argonaut makes clear that our decision was based on "the stare decisis controlling effect of Supreme Court decisions from the past century, cases from which this Court has never receded." 474 So.2d at 214. Thus it is not unfair, though it may be unkind, to refer to the district court’s conclusion as "erroneous.”

. To instruct the jury on negligence per se based on violation of a statute or ordinance imposing a higher duty than that imposed by the statute or ordinance in effect at the time of the conduct charged as negligent is error. Morrison Cafeterias Consolidated, Inc. v. Lee, 215 So.2d 491 (Fla. 1st DCA 1968).